## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| | § | |
| **ETHOR IP CORPORATION,** | § | |
| | § | |
| Plaintiff, | § | **CAUSE NO._____** |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| **GOTO CONCEPT, LLC,** | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT AND JURY DEMAND

Plaintiff Ethor IP Corporation ("Ethor") alleges for its Complaint for patent infringement against Goto Concept, LLC ("Goto Concept") the following:

### THE PARTIES

1.      Plaintiff, Ethor IP Corporation, is a Delaware corporation.  Plaintiff is the owner, by assignment, of U.S. Patent No. 10,460,363.

2.      Goto Concept, LLC is a Missouri corporation with its principal place of business at 87 Boschert Creek Dr., Saint Peters, MO 63376.  Goto Concept, LLC may be served through its registered agent at this address.

3.      GotoLiquorStore is an online liquor ordering platform, operated by Goto Concept, LLC.

4.      GotoLiquorStore functions under the direct management and control of Goto Concept, LLC.

5.      Goto Concept, LLC operates, and sells as a service, a platform for placing online orders.

## JURISDICTION AND VENUE

6.      Ethor brings this action for patent infringement under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).  Goto Concept does business in this judicial district, has committed acts of infringement in this judicial district, has a regular and established place of business in this judicial district, and has purposely sought and transacted business in this judicial district involving the accused products.

## Ethor IP

8.      Ethor IP Corporation is the owner by assignment of the U.S. Patent No. 10,460,363 ("'363 Patent").  Ethor IP was founded by Gary Ziegler, who is a pioneer in point-of-sale software. Mr. Ziegler's customers include Ruby Tuesday, Bandana's BBQ and Porto's Bakery among others.

9.      Mr. Ziegler earned acclaim for his solutions in the point-of-sale space including his early work in solving the problem of integrating diverse point-of-sale systems and providing scalable solutions using cloud computing long before his

peers.

## Ethor IP's '363 PATENT

10.     The '363 Patent was issued by the United States Patent and

Trademark Office on October 29, 2019, and is titled "System, Method, and

Computer Program for Integrating Diverse Point of Sale Systems."

11.     The '363 Patent generally pertains to integrating diverse point-of-sale

(POS) systems, a technical problem that arises in the retail industry.

12.     Application No. 12/870,420 ("420 Application"), filed on August 27,

2010, issued as the '363 Patent.

13.     In 2010, significant technological challenges impacted the retail

industry because of a fractured point-of-sale system infrastructure.  Retailers

(including franchises) commonly used diverse point-of-sale systems.

14.     Problems arose when retailers (including franchises) wanted to do

something as a single unit, such as online ordering.  For example, a franchise might

have five diverse point-of-sale systems being used throughout their chain.  Prior to

the invention, to provide a unified online ordering system that works with all their

stores, the franchise would have to implement five different custom integrations

with five diverse POS systems, none of which "talk" to each other or are integrated

with each other in any way.  As a result, retailers aiming to expand into online

sales struggle to use their existing point-of-sale data in a unified manner.

15.     One of the problems was that POS systems were too different from one another to effectively share information, work together and utilize differing data structures.  Then-existing solutions failed to centralize access to POS data in an efficient way which led to disorganized, inefficient management of the data.

16.     For example, at the time, POS systems could be configured to structure a restaurant's menu items, modifiers, combos, pricing or discounts in a variety of different ways.  Although this flexibility of POS configuration offered restaurants the ability to configure their POS however they wanted, the result was that the configuration created a problem when trying to take those unique data structures from each restaurant POS and use them in an effective way for online ordering, promotion, or other activities.

17.     Disorganized POS data presented practical problems for retailers.  For example, a franchise utilizing different POS systems at various locations will need to access both of those systems to gain a complete understanding of the retailer's sales activity.

18.     For retailers with larger numbers of POS systems, the time and effort spent accessing each of those systems is even greater and imposes correspondingly greater burdens.

19.     For companies interested in merging with, acquiring, or being acquired by, one another, their different POS systems meant that assuming those

burdens would be an unavoidable aspect of moving forward with the desired merger or acquisition.  This issue compounded with each new system that was added with then existing POS systems.

20.     Then-existing solutions were unable to leverage POS data for online promotions without encountering difficulties relating to the incompatibility of the data between different POS systems.

21.     Ziegler and his co-inventor, Andrew Finall, conceived of a novel solution: by relying on a "system/agent" insight, Ziegler and Finall unlocked the potential for an unconventional, centralized architectural improvement over then-existing solutions.

22.     The unconventional combination of point-of-sale agents with corresponding point-of-sale systems enabled an unconventional architecture that further comprises an order manager and a common data model.

23.     The '363 claims neither describe nor claim a concept or a generic computerized system, instead the claims address, among other things, a persistent problem unique to the retail industry at the time of the invention. That persistent problem was that brick-and-mortar retailers with both legacy POS systems and an e-commerce platform encountered the unique difficulty of POS systems being too different from one another to effectively share information, work together, or permit seamless online ordering.  The '363 claims address unique shortcomings of

the then-existing solutions to that original problem.

24.     In June 2019, the Patent Trial and Appeal Board held that the 420 Application (later issued as the '363 Patent) claimed an invention that "reflect[s] a technology improvement of integrating diverse systems, so that non-compatible data from diverse systems are mapped to a common data model for centralized access."

25.     A person of ordinary skill in the art at the time of the invention would recognize the arrangement of components claimed by the '363 Patent as unconventional and would understand that the conventional way of accommodating diverse POS systems (ad hoc, custom integrations) was time-consuming, tedious, and error prone.

26.     The novel use and arrangement of the specific combination, steps, system, and devices recited by the '363 Patent were not well-understood, routine, or conventional to a person skilled in the relevant field at the time of the inventions.

27.     In particular, the combination recited in at least Claims 1 and 9 of the '363 Patent were not well understood, routine, or conventional to a person of skill in the relevant field at the time of the inventions.

28.     The Patent Trial and Appeal Board agreed that the prior art identified by the examiner failed to disclose "communicat[ing] with [a] plurality of diverse

point of sale systems." The Patent Trial and Appeal Board also found that the inventions reflect a technological improvement of integrating diverse systems, so that non-compatible data from diverse systems are mapped to a common data model.

29.    The claimed "point of sale agent" is unconventional because it is "configured to map [non-compatible] point of sale data to the common data model."

30.    The combination of the novel "point of sale agent" with more than one existing point-of-sale systems (that generate data incompatible with one another) is novel and unconventional (hereinafter, "'agent'/'systems' combination").

31.    The "agent"/"systems" combination permits the arrangement of an order manager, database, and diverse point-of-sale systems in a novel architecture (hereinafter, "Ziegler/Finall Architecture").

32.    The Zeigler/Finall Architecture facilitates online ordering for companies that have incompatible POS systems and easier mergers and acquisitions for companies with incompatible POS systems.

33.    The Ziegler/Finall Architecture also facilitates a faster exchange of information between the order manager and diverse point-of-sale systems.

34.    A practical benefit from the faster exchange of information between

the order manager and diverse point-of-sale systems is that the architecture can support faster transactions (same-day fulfillment within hours, if not minutes) in part because there is less latency.

35.     Another practical benefit from the two-way exchange of information between the order manager and diverse point-of-sale systems is a greater degree in confidence in the ripeness of the information maintained in the database, which is populated by information generated by diverse point-of-sale systems and mapped by the point-of-sale agent to the common data model provided by the database.

36.     The novel arrangement of the point-of-sale agent, diverse point-of-sale systems, order manager, and database (the Ziegler/Finall Architecture) was unconventional at the time of its conception.

37.     The novel use and arrangement of the specific combination, steps, system, and devices recited by the '363 Patent including the combination recited in Claim 1 and Claim 9 of the '363 Patent were not well-understood, routine, or conventional to a person skilled in the relevant field at the time of the inventions.

## NATURE OF THE ACTION

38.     Ethor asserts that Goto Concept, LLC infringes, directly and indirectly, U.S. Patent No. 10,460,363 ("'363 Patent" or "Ethor Asserted Patent").

## GOTO LIQUOR STORE

39.     GotoLiquorStore is an online liquor ordering platform, operated solely

by Goto Concept, LLC.

40.      GotoLiquorStore currently operates in 38 U.S. states, including Missouri.

41.      The Goto Concept products and services accused in this case include the GotoLiquorStore website, the GotoLiquorStore Store App/mobile applications, as well as any other the Goto Concept products that include POS data-mapping features ("Goto Concept Accused Products").

42.      The GotoLiquorStore website and mobile applications offer identical functionalities and perform the same operations, providing consistent user experience across all platforms.

43.      Goto Concept's Accused Products allows users to shop from many local liquor stores and place orders for alcohol, even when retailers rely on separate POS systems.



× **What is GotoLiquorStore and how does it work?**

GotoLiquorStore is an online alcohol ordering platform which allows the consumers of legal drinking age to order beer, wine and spirit online and get it delivered at doorstep or can pick up from the local retailers.

We partner with local retailers to fulfill orders. GotoLiquorStore provides you the most convenient and unique way of shopping for liquors from the comfort of your home. All the inventories of nearby retailers are curated on our website and mobile app.

https://www.gotoLiquorStore.com/faqs



https://www.gotoconcept.com/



GotoLiquorStore Cart https://www.gotoLiquorStore.com/cart

44.      GotoLiquorStore integrates with a variety of POS systems, allowing retailers to connect their POS system directly to GotoLiquorStore's online ordering platform.

45.     GotoLiquorStore explains that the platform connects with the

retailer's POS system to pull inventory.



https://www.youtube.com/watch?v=sk4bFsX8tjU

46.     GotoLiquorStore purports to provide a "better shopping experience,"

allowing customers to "get [their] favorite beer, wine, liquor and more delivered

from local stores."  *See*

https://www.gotoliquorstore.com/?srsltid=AfmBOop4fJ035hmnGM9MJBlG9hJLT

hHEOcSgTiKYxmqeevHVoIm8vSVN

47.     GotoLiquorStore's mobile application was developed and made

available for download by Goto Concept, LLC.



https://www.gotoliquorstore.com/?srsltid=AfmBOoo0TP2hbjivSNoHwOntFiV

TNhxS2rdfj3R5K41tVlD0DY7Jq-PN

48.     GotoLiquorStore offers a specialized Store App, designed explicitly

for retail owners that allows retail owners to manage orders from the

GotoLiquorStore marketplace.



https://account.gotoliquorstore.com/features

**NOTICE TO GOTO CONCEPT**

49.     In June, 2024, Ethor contacted GotoConcept and provided information

about Ethor, its technology, and the inventions claimed in the '363 Patent.

50.     Goto Concept received notice of its infringement of the '363 Patent at

that time.

## COUNT 1
## (INFRINGEMENT OF U.S. PATENT NO. 10,460,363)

51.    Ethor realleges and incorporates by reference the allegations set forth above.

52.    Ethor is the owner, by assignment, of U.S. Patent No. 10,460,363. The '363 Patent is available at https://patentcenter.uspto.gov/applications/12870420.  The '363 Patent was issued by the United States Patent and Trademark Office on October 29, 2019.

53.    As the owner of the '363 Patent, Ethor holds all substantial rights in and under the '363 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

54.    The '363 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

55.    Goto Concept makes, uses, offers to sell, sells, and/or imports products and services that infringe the '363 Patent.

56.    Goto Concept has directly infringed at least claims 1, 2, 3, 9, 10, and 11, of the '363 Patent by using (including its own testing), making, selling, offering for sale, licensing, and/or importing into the United States without authority the Goto Concept Accused Products.

57.    The Goto Concept Accused Products include a first computer

processor in communication with the plurality of diverse point-of-sale (POS) systems.  The GotoLiquorStore platform is touted as integrated with multiple POS systems, such as Clover-branded POS systems and LiquorPOS-branded systems. Each diverse point-of-sale system generates non-compatible point-of-sale data. Point-of-sale data generated from POS systems (e.g., Clover) are not compatible with point-of-sale data generated from other POS systems.



https://account.gotoLiquorStore.com/

58.    The first computer processor in the Goto Concept Accused Products is configured to communicate with each of the plurality of diverse point-of-sale systems using a point-of-sale agent.  For example, the first processor used in the GotoLiquorStore platform is configured to execute instructions (programs, modules, routines, subroutines, coroutines, threads, daemons, services, or the like) comprising an agent that facilitates the processor's communication with (as one example) a Clover-branded POS system.

59.     The Goto Concept Accused Products include a second computer processor linked to the first computer processor.  The processors are linked at least because the absence of such linking would preclude The Store App from providing real-time content management functionality.

60.     The second computer processor in Goto Concept Accused Products is configured to operate an order manager.  For example, the second processor used in the Goto Concept Accused Products is configured to execute instructions (programs, modules, routines, subroutines, coroutines, threads, daemons, services, or the like) that comprise a manager that facilitates the processor taking orders.

61.     The Goto Concept Accused Products include a memory storage unit for storing a point-of-sale database.  The point-of-sale database stored in the memory storage unit in Goto Concept Accused Products provides a common data model configured to be recognized by the order manager.

62.     For example, product data displayed by the Goto Concept mobile application is standardized to include category, description, price, and other point-of-sale data:



https://www.gotoLiquorStore.com/



https://www.gotoLiquorStore.com/p/jack-daniels-old-no-7-tennessee-whiskey/2501

63.    The second processor, which is configured to operate the order manager recognizes the standardized data from various POS systems.

64.    This capability is demonstrated by its ability to recognize multiple options for a single alcoholic beverage, including varying sizes, prices, and store locations.

65.     The common data model provided by the point-of-sale database stored in the memory storage unit in Goto Concept Accused Products includes fields corresponding to at least one of a point-of-sale system identifier, pricing, and promotions.

66.     The point-of-sale agent in Goto Concept Accused Products receives the non-compatible point-of-sale data from each of the plurality of diverse point-of-sale systems and the order manager.  The point-of-sale agent in Goto Concept Accused Products is configured to map the point-of-sale data to the common data model.



https://www.gotoLiquorStore.com/cart



https://www.gotoLiquorStore.com/checkout

67.     Goto Concept's activities are without authority of license under the '363 Patent.

68.     At least as early as June 19, 2024, Goto Concept has encouraged others to infringe the '363 Patent by providing instructions and customer support for the Goto Concept Accused Products.  Goto Concept's customer support includes the publication of information and how-to guides, directing its customers to cause the claimed systems to be used in the United States.  Goto Concept's customer support materials also direct its customers to cause the claimed methods to be performed in the United States.

69.     At least as early as June 19, 2024, Goto Concept advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the Accused Goto Concept products.

70.　　　Goto Concept has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the Goto Concept Accused Products that are specially made and adapted—and specifically intended by Goto Concept—to be used as components and material parts of the inventions covered by the '363 Patent.

71.　　　Goto Concept also knew that the Goto Concept Accused Products are operated in a manner that practices each of the asserted claims of the '363 Patent and that the features of the Goto Concept Accused Products identified above are specially made and adapted to infringe the asserted claims of the '363 Patent.

72.　　　The Goto Concept Accused Products include the features identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the Goto Concept Accused Products.  The features of the Goto Concept Accused Products identified above are not a staple article or commodity of commerce, and, because the functionality was designed to work solely in a manner that is covered by the '363 Patent, it has no substantial non-infringing use.

73.　　　Based upon the foregoing facts, among other things, Goto Concept induced infringement and contributorily infringed the asserted claims of the '363 Patent under 35 U.S.C. § 271(b) and (c).

74.      Goto Concept's acts of direct and indirect infringement have caused and continue to cause damage to Ethor for which it is entitled to recover damages sustained as a result of Goto Concept's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## JURY DEMAND

Ethor hereby demands a trial by jury on all claims, issues, and damages so triable.

## PRAYER FOR RELIEF

Ethor prays for the following relief:

a.  That Goto Concept, LLC be summoned to appear and answer;

b.  That the Court enter an order declaring that Goto Concept has infringed each of the Asserted Patent.

c.  That the Court grant Ethor judgment against Goto Concept for all actual, consequential, special, increased, and/or statutory damages, including, if necessary, an accounting of all damages; pre- and post-judgment interest as allowed by law; and reasonable attorney's fees, costs, and expenses incurred in this action; and

d.  That Ethor be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated:  March 19, 2025                Respectfully submitted,

                                      By:   */s/ Keith J. Grady*

                                      Keith Grady
                                      **TUCKER ELLIS LLP**
                                      100 South 4th St Suite 600
                                      St. Louis, MO 63102
                                      Telephone: 314.571.4979
                                      Keith.Grady@tuckerellis.com
                                      Bar No. 46757(MO)

                                      Jennifer Tatum Lee (*pro hac vice* forthcoming)
                                      **CONNOR LEE & SHUMAKER PLLC**
                                      609 Castle Ridge Road, Suite 450
                                      Austin, Texas 78746
                                      Telephone: 512.646.2060
                                      jennifer@CLandS.com
                                      Bar No. 24046950(TX)

                                      Cabrach Connor (*pro hac vice* forthcoming)
                                      **CONNOR LEE & SHUMAKER PLLC**
                                      609 Castle Ridge Road, Suite 450
                                      Austin, Texas 78746
                                      Telephone: 512.646.2060
                                      Cab@CLandS.com
                                      Bar No. 24036390(TX)

                                      **Attorneys for Plaintiff Ethor IP Corporation**